## COUNTY OF SAGADAHOC.

THOMAS SPINNEY & *als. versus* JOHN MARR.

In a deed of warranty, the grantor conveyed certain interests, described in the following words : — " All the fishing rights, rights to the 'sand,' and to all useful things that may drift upon the beach." The deed also contained a description of the land that constituted the beach, and words of inheritance. — *Held*, that the word " sand" in the deed, was equivalent to " land," and that the grantor conveyed the fee.

ON EXCEPTIONS from *Nisi Prius*, APPLETON, J., presiding.

This was an action of trespass. All the material facts in the case are stated in the opinion of the Court.

*C. R. Porter*, for plaintiffs, argued, —

1. In the construction of a grant, the Court will take into consideration the circumstances attending the transaction, the particular situation of the parties, and of the thing granted, in order to ascertain the intent of the parties. And when the intention is thus ascertained, the Court will carry it into effect, if the rules of law will permit it. *Adams* v. *Frothingham*, 3 Mass. 352; *Wallis* v. *Wallis*, 4 Mass. 135; *Marshall* v. *Fiske*, 6 Mass. 24; *Pray* v. *Pierce*, 7 Mass. 381; *Litchfield* v. *Cudworth*, 15 Pick. 23; *Frost* v. *Spaulding*, 19 Pick. 445.

2. Doubtful words and provisions in a deed poll, are to be taken most strongly against the grantor. *Adams* v. *Frothingham*, 3 Mass. 352; *Worthington* v. *Hylyer*, 4 Mass. 196.

3. If the word in the deed is " sand," instead of " land," this action can be maintained, because it conveys " rights" to the " sand," and the whole beach being sand during the ebbs of the tide, the whole was the property of the plaintiff and subject to his control.

The Court held, in *Howard* v. *Lincoln*, 1 Shepley, 122, that a reservation of all the trees standing and growing, reserved also the land, and that trespass *quare clausum* would lie. Cer-

Spinney *v.* Marr.

tainly, here every thing being transferred but the water, the land passed under the term "sand."

*Gilbert*, for defendant.

TENNEY, C. J.—Ebenezer D. Chappel, the plaintiffs' grantor, derived title to a farm on Hunnewell's point, in the town of Phippsburg, including the beach, described in the writ, from Josiah H. Moore and others, by deed dated Oct. 30, 1838; and, on July 25, 1840, conveyed to Samuel W. Look that part of the land which was above high water mark, reserving therein certain privileges; and, on Sept. 9, 1854, he gave to the plaintiffs a deed, under which they claim title and the right' to maintain the present action.

There is no controversy that the beach in question was not conveyed by Chappel's deed to Look, but remains in Chappel, if it did not pass to the plaintiffs, in his deed to them. The interest conveyed to them by the latter deed is in these words:—"All the fishing rights, rights to the sand, [or land,] and to all useful things that may drift upon the beach, derived to me within or upon the limits hereinafter stated, under the deed of Josiah H. Moore and others to me, dated Oct. 30, 1838." Then follows a description of the land, which composes the beach.

The Judge, who presided at the trial, read the word, which is matter of question between the parties, as being "sand," and ruled that, by the deed from Chappel to the plaintiffs, no fee in the land was conveyed, and that trespass for the breach of the close could not be maintained, and directed a nonsuit, to which ruling exceptions were taken.

The only question which is deemed important at this time is, whether the construction of the deed by the Judge was correct, upon the hypothesis that the disputed word was designed by the parties to be "sand" and not "land;" and we propose to examine this as a legal question on this assumption.

The beach or strand, described in the deed to the plaintiffs, is·upon tide water, and is. washed by the tides and the waves, and upon which, it was understood, drift-stuff would be thrown

by their action.  It was also regarded as having value for a fishing ground.  Upon the assumption that the word is "sand," and from the language used, this beach was wholly or partially composed of that material.  And it does not appear that the ruling of the Judge was made on the ground that it was otherwise.  None of the deeds introduced in evidence afford by their contents any grounds for supposing that this beach was an appendage of any importance to the farm, as yielding or capable of yielding any vegetable production, such as thatch, or any thing which is found sometimes growing between high and low water mark.

Whatever was intended to pass by the deed, to the plaintiffs, was conveyed to them, their heirs and assigns forever; and the right to dower therein was relinquished by the wife of the grantor.

The rights intended to be conveyed by the deed, are those derived by the grantor, by the deed of Josiah H. Moore and others to him of Oct. 30, 1838.  And so far as the deed upon a proper construction covers any rights, those rights were conveyed to the exclusion of any remaining right in the grantor.

Was there, then, any thing, which the grantor could have enjoyed, after the delivery of his deed?  He had no privilege of fishing upon the beach; none of taking any useful things that might drift thereupon; and none to the sand, of which the beach was in part at least composed; all these rights he had derived from the deed of Moore and others, and such he had conveyed to the plaintiffs without reservation.

When Chappel executed his deed to the plaintiffs, he resided in a distant State, and had before parted with the farm, bounded in part by this beach, and it does not appear that he was the owner of any other real estate in or near Phippsburg.  Some of the privileges, which he had reserved in the deed of the farm, had expired by his removal; and if others remained, they could not have been regarded of much importance, while he was the owner of the beach, and after his deed conveying it, upon any construction, they could not have been regarded

as of any value.   If there were rocks upon the beach, the case contains nothing which indicates that they were of greater value than those of the many leagues of rocks which compose much of the sea-shore of this State, and  probably did not at all enter into the minds of the parties to the contract.   It does not appear that the situation of the parties, the subject matter of the transaction, or the language of the deed, authorizes the conclusion that the grantor designed to retain any interest in land described in the deed, but that whatever right he acquired from Moore and others he intended to convey.

The beach was intended as a fishing privilege, and a spot which, from its peculiar location, received the drift of the ocean, of considerable value.   It is not shown by the facts of the case to have possessed a value for other purposes.   It was the basis of these privileges, and seems to have been described " the sand," as the ground on which the privileges could be enjoyed, instead of the word " land," for the reason, that it was so composed.           *Exceptions sustained—*
*Verdict set aside—and new trial granted.*

RICE, CUTTING, and MAY, J. J., concurred.

APPLETON, J., non-concurred.